### GEORGE S. GRIER v. WILLIAM I. SIMPSON.

*Contract—Acceptance—Admission— Verdict of Jury.*

Where there is a contract to make and deliver an article to another person who is to accept it, if it does certain specified work, the other party cannot be sued for the price thereof unless he accepts it. If he refuses to accept he may be sued for damages for not accepting.

The acceptance of an article to be made and delivered to a party under a contract is a question for the jury.

When liability for a demand is charged against, or imputed to a person, he should deny it on the first occasion or oppurtunity to do so, in order to avoid the admission which is reasonably implied by silence.

In deciding in favor of that side which has the greatest weight of testimony, the jury cannot be taken to impute falsehood to anyone.

(*Kent, October, 1887.*)

ASSUMPSIT on a special contract in writing for building a machine to mix fertilizers to be run by the defendants' engines, and to do the work in mixing and emptying the same. The defendant to pay not over two hundred dollars for it, and if the plaintiff could make it for less, he was to do so.

The evidence for the plaintiff was to the effect that the machine cost over two hundred dollars and was accepted by the defendant.

The evidence for the defendant was in direct contradiction. That the machine leaked from the first and never did the work for which it was intended and the contract called for.

*Lofland*, for the plaintiff, cited *Benj. on Sales*, Sec., 600; 53 N. Y., 515; 2 Barb., 514; 43 Vet., 430; 22 E. C. L. Rep., 122; 1 Camp., 190; 4 Harr., 360; 4 *Ibid*, 3.

*James Pennewill* and *George V. Massey*, for the defendant:

The cases cited on the other side were action of warranty on the contract after acceptance of the goods. 4 Harr., 360,362; *Benj. on Sales*,, Secs. 895,896; 22 E. C. L. Rep., 122; 23 Wend., 350; Ch. on Cont., 450; Benj. on Sales, Sec., 600; 5 Houst. 168.

THE COURT, COMEGYS, C. J., charged the jury:

This is an action brought by George S. Grier the plaintiff to recover from William I. Simpson the sum of two hundred dollars, with interest, on the following, which is treated as an agreement between the parties:

"We the undersigned contract and agree as follows: George S. Grier is to make for William I. Simpson a machine to run by his engine to mix fertilizers, the machine to do the work in mixing and emptying the same, and the said W. I. Simpson is to pay not over two hundred dollars for the same all complete, and if I can afford to make the machine for less than $200 I am to do so."

(Signed)        "GEO. S. GRIER."

This is a very simple paper, the meaning of which there is and can be no dispute about: it is to make by Grier for Simpson, a machine to run with the latters engine and mix fertilizers and to do the work of mixing and emptying the same.

A model of the machine in its general features has been exhibited to you by the plaintiff in proving his case. The price agreed upon was the sum named, but it was further agreed that if the plaintiff could afford to make the machine for less than that price, he was to do so.

The plaintiff made a machine, as he claims in fulfilment of his contract, and set it up in the factory of the defendant, attaching the engine therein to it. This was in the latter part of the Spring of 1880, near the close of the manufacturing season of fertilizers. It seems that the defendant was not present at this time, though he does not appear to have been out of the town of Milford, where his factory was, on business or otherwise. His factory was open and in the charge of his servants; the plaintiff therefore had the right to deliver and set up the machine there in pursuance of his agreement, in which there is no provision that the defendant shall have notice of the purpose of the plaintiff to fulfil his part of the contract; nor is there any implied by law. But notwithstanding this right of the plaintiff, the defendant could not be fixed with acceptance of the machine by such act alone of the plaintiff. The thing bargained for was something to be manufactured by the plaintiff for the specified purpose of mixing and emptying fertilizers. Before, therefore, acceptance of the machinery bargained for could be complete so as to bind the defendant for the price, he must have had opportunity to try it, and decide whether he should accept and pay for it, or not. Thus you will see that there cannot be said to have been any acceptance of the machine by the defendant by the bare fact that it was set up at his factory—of which fact, however, he soon became aware. Something more was necessary—which was that he should try, and then decide with respect to it—this, however, in a reasonable time. It is proper to explain to the jury, that

where, as in this case, there is a contract to make and. deliver an article to be manufactured by one party, the other party cannot be sued for the price of it, unless he accepts it, that is receives and treats it as his own. If he refuse to accept, he may be sued, upon his refusal, to recover damages for not accepting; but not to recover the price of the thing itself. The contract must be completed on both sides, before a suit will be for the price agreed upon; the one party must have made and delivered; the other must have accepted. It therefore is of the first importance to ascertain what an acceptance of property bargained for is, and how it may be shown to have taken place.

Acceptance in a case of this nature, may be, if the parties so stipulate, without any trial whatever of the machine to test its sufficiency for the purpose designed in its construction; but if there be no such stipulation, it cannot be said to exist until the machine has either been tried and the purchaser has become satisfied with it, or he has had a reasonable time in which to make the trial, and has not availed himself of it. In this case trial was made of the machine by defendant soon after it was set up, the plaintiff being present, as well as the defendant's servants and the plaintiffs' also. It very shortly broke in one of its arms as has been proved on both sides—the defendant using, as his witnessss state, strong language with respect to it. The plaintiff declared, as they also state, that he would take from it, or add to it, until it was made right. They also state that the plaintiff used language to the effect that it was not reasonable to expect him to make a perfect machine in the first instance, he not having built one before. Here was a trial then and a mishap from faulty construction. There cannot be said to have been any acceptance at that time. In pursuance either of this alleged language on the plaintiff's part, or of his duty if he expected to recover the price of the machine, the plaintiff made and put upon the machine a new arm, which there is no proof before you, ever gave way. There is also testimony before you on the defendant's part, that the stirring blades, knives or ploughs (whichever may be their

proper name) were in that season of 1880, Spring or Fall, changed twice to do better work; whether they fulfilled the conditions requisite for such implements, it is for you to decide, weighing the proof on both sides. It is also testified before you that the mixing tub leaked in its bottom seams, or some of them, and also at the apex or top of the cone of wood within which the shaft was enclosed inside the tub, and that the plaintiff said if it continued to leak (or words to that effect) he would line it with sheet lead. The defendant's witnesses state that the tub continued to leak, and that the plaintiff did not so line it. It was also testified by one of them that sometime in the year 1881, at the instance of the defendant, he called upon the plaintiff and required him to come and take the machine away; but that he did not comply with such requirement.

In the Spring of 1881, some other work was done by the plaintiff to the machine—the defendant's witnesses speaking concerning it, stating that it was simply an effort to start the machine, which they said could not be accomplished on account of rust and clogging from the mixture made in the tub, which had hardened around the shaft where it revolved in the iron box they describe, which effort resulted in breaking the box with a hammer by the witness Robert D. Grier—while the latter says the breakage of the box if there was any (he does not remark that there was) was done in his work, not of trying to start the machine, but of attaching to it other apparatus to make the stirrer run slower. Another box, however, was put around the shaft, and thus the damage was repaired. Supposing the testimony of the witness Robert D. Grier, to be true there was still nevertheless, experiment going on to perfect the machine for its work; and therefore down to this time there would not seem to have been such acceptance of the machine as would make the defendant liable for the price of it, especially as no claim is here made by the plaintiff for anything but the contract price of the machine, or the value of it if you think it was not fully worth the contract price.

But afterwards, according to the testimony of three witnesses

on the part of the plaintiff, conversations occurred with the defendant, which (if you credit the statement) apparently alter the condition of things very materially.  I refer to the evidence given by Robert D. Grier and by Thomas E. Draper and Thomas Draper. Grier says that sometime in 1881, after he had made the change so as to lessen the speed of the mixer in the tub, he called to the defendant, whom he saw in the street at Milford, to know how the machine worked, and was answered, as he says by the expression, " elegant, elegant."   As those are words not correctly applicable to the movements of machinery, it is for you to say what the defendant intended should be understood by their use.   The Messrs. Draper are phosphate manufacturers, and in 1881, in August of that year as Capt. Thomas Draper stated (his nephew did not fix the time, but thought it was July or August) they went to Milford to procure a stirring machine.   They there saw the defendant, and he invited them, as one of them stated, to go with them to his factory to look at the machine the plaintiff had set up for him. They did examine it, and in reply to questions put with respect to the quality of the machine obtained as they state, the answers to which they have sworn.   Now these answers, as well as that made to Robert D. Greir, if you credit the witnesses who speak of them, are not only at variance with the state of things sworn to by the defendants servants, when describing the machine, but are evidence for you to weigh and consider of acceptance in fact by the defendant of the machine as that which he contracted for.   And, in support of the inference of acceptance, you have the further fact, sworn to by both the plaintiff and his son, of language used, on a certain occasion (mentioned by them) in the town of Milford, by the defendant in response to a demand, or request for payment for the machine—language which certainly was no denial of liability.

When liability for a demand is charged against, or imputed to a person, and the occasion or circumstances of making it are such as to call upon him, if he dispute such liability, to deny it, he ought to do so, in order to avoid the admission which is reasonably im-

plied by silence. But it is not to be forgotten that the defendant emphatically denies the alleged demand and conversation, as he also denies, with equal emphasis, the statement which Robert D. Grier swears he made to him about the working of the machine when he alleges he inquired of him about it, and also the declarations alleged by the Messrs. Draper to have been made to them at his, the defendant's factory, in the summer of 1881. So that there is a complete conflict between the testimony on the part of the plaintiff, consisting of his own statement and those of his witnesses, and the denial of the truth of them by the defendant—he alleging that he never made any such. You are therefore called upon to decide between them. In case of conflict the jury should give their verdict (when deciding the conflict determining the rights of the parties) to that side which has the greatest weight of testimony—that is to that side which has the greater probability of truth to support it. And in so doing the jury cannot, in any sense, be taken to impute falsehood to anybody. If you think the weight is on the side of the plaintiff, then such statements as sworn to have come from the defendant appear to be inconsistent with any idea of non acceptance of the machine as a substantial compliance with the contract; whether they are, or not, is left to you, who are the judges thereof.

If, upon a review of all the testimony on both sides bearing upon the question directly or indirectly, you should believe that the defendant's expressions with respect to the quality of the machine made, as stated by Robert D. Grier to him, and by the Messrs. Draper to them (supposing them to have been made, and that is matters for you to decide) are inconsistent with the idea that he was not then satisfied with it, then the plaintiff is entitled to your verdict for his claim ; but if, on the contrary, you do not believe that such, or like expressions were made by the defendants, or that if made they are not inconsistent with the denial of acceptance and ownership here set up in his behalf, then he is entitled to your verdict.

The whole case is with you, upon all the testimony given by the witnesses and you are to decide it alone upon that testimony and all the circumstances shown by it.

Verdict for the defendant.